# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

DAVID A. YOUNG,
    Plaintiff,

v.                                        Case No. 3:16cv298/RV/EMT

PNC BANK, N.A.,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court upon a Motion to Dismiss (ECF No. 16) filed by Defendant PNC BANK, N.A. ("PNC"). Plaintiff has filed a response (ECF No. 18). Additionally, Plaintiff filed a "Motion for Default Summary Judgment . . ." (ECF No. 13), to which Defendant has responded (ECF No. 21). Plaintiff subsequently filed an "Objection" to Defendant's response (ECF No. 24), and he has also filed an Affidavit (ECF No. 12) and a "Motion for Compensation/Damage Amount Change" (ECF No. 17). The court has considered all the above filings in recommending a ruling on Defendant's Motion to Dismiss.

Dismissals for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most

favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive the motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions"

that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> . . . a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration, the undersigned concludes that Defendant's Motion to Dismiss should be denied without prejudice.

Plaintiff identifies his claim as one for trespass, the subject of the trespass evidently being property located at 111 Mohawk Trail, Crestview, Florida (ECF No. 1-2 at 8). To obtain a loan on this property, on September 19, 2005, Plaintiff executed a note in the amount of $276,000.00 from the original lender, National City Mortgage, and a mortgage secured by the property, which as Defendant shows is

recorded in the public records of Okaloosa County, Florida (ECF Nos. 16-1, 16-2). The note was subsequently sold to Defendant PNC Bank, N.A.

The basis for Plaintiff's trespass claim appears to be that, according to Plaintiff, Defendant's mortgage note, secured by a lien on Plaintiff's property, was in effect satisfied and replaced by Plaintiff's own promissory note that he drafted and delivered to a local branch of the Defendant bank on July 27, 2015. Plaintiff asserts that Defendant's lien against the mortgage of the property was "paid in full with the 27 July, 2015, Defendant Signed Accepted note security instrument as the collateral and money making the payment tendered under law with no controversy" (ECF No. 24 at 2).

Plaintiff further states that "Plaintiff's injury and trespass of property is that the Defendant is threatening foreclosure and a bad credit rating with low credit scores if Plaintiff does not continue paying the monthly payments for an alleged debt that has been paid-in full with full settlement as of 27 July, 2015" (*id.*). Thus, Plaintiff's claim is that his own note effectively satisfied the original mortgage note, which is therefore no longer in effect, and as a consequence Defendant's attempts to enforce

the terms of its original note, including foreclosure, constitute a trespass on the property.[1]

The note tendered or delivered by Plaintiff, which stated that payments would be made every month until the obligation was fulfilled, appears to have been signed by Plaintiff on July 8, 2015, and also bears the signature of Lara Waters (dated July 27, 2015), who was identified as the manager of the bank branch that Plaintiff visited. Her signature carries the notation that the note was "Received/Accepted" by her (ECF No. 24 at 12). Plaintiff also presented a document titled as a "Release of Mortgage and Note for 111 Mohawk Trail, Crestview, Florida," in which the following statement appears: "Find enclosed negotiable security instrument payment and final settlement to, PNC Bank, NA, regarding final payoff, Case No. ******3101" (ECF No. 24 at 13). This document was similarly signed by Lara Waters, also on July 27, 2015, again with the notation that the document was "Received/Accepted" by her (*id.* at 13). Plaintiff has also submitted personal checks that he drafted as payments on Defendant's mortgage note; Plaintiff put handwritten statements on these drafts indicating that he was submitting the payments "under protest," and that his account

---

[1] As Defendant describes it, Plaintiff's new note would essentially convert Defendant's secured note into an unsecured note.

had been paid off since July 25, 2015, the date upon which he presented his own note and release to Defendant's bank branch (*id.* at 14–16).

Plaintiff further indicates that the "[o]riginal [b]lue inked" signature from Ms. Waters, together with the fact that he had not "received any verified document nor bill that states that any money is owed" to Defendant, showed that Defendant "Breached and Defaulted the Terms and Conditions of [Defendant's] new received, and accepted by signature bilateral contract," that is, Plaintiff's new note (*see* ECF No. 12 at 4–7).[2] Thus, Plaintiff seems to claim that, as a result of Defendant's actions or non-actions, his note was accepted as a new contract, and Defendant's subsequent efforts to collect on their original mortgage note constituted a trespass (ECF No. 1-2 at 9).

Defendant contends that Plaintiff's presentment of his promissory note and "Release of Mortgage and Note" to Defendant's local bank branch was insufficient to establish a new contract and thus had no effect on the original mortgage note.[3]

---

[2] Contrastingly, Plaintiff indicates in his "Notice to Enforce Bank Signed and Accepted Contract and Request a Common Law Trial by Jury," which he attached to his complaint, that Defendant's non-action occurred when "the presented instrument was never returned" to him (ECF No. 1-2 at 9).

[3] Defendant attaches the original note and mortgage to its motion. Where as here the Notes, Mortgages, and other such documents are referenced in the complaint, are central to Plaintiff's claims, and are not disputed as to authenticity, the Court may consider them without converting Defendant's motion into one for summary judgment. *See* Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010); Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997).

Defendant describes Plaintiff's documents as unilateral agreements that fall short under Florida law. Specifically, Florida Statutes, Section 687.0304 provides in relevant part:

> (1) Definitions.--For the purposes of this section:
> (a) "Credit agreement" means an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation.
> \* \* \*
> (2) Credit agreements to be in writing.--A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

This section has been held to include agreements to renew or modify loans. *See* Synovus Bank v. Quail Lake Developers, LLC., Case No. 3:12-CV-132-RS-EMT, 2012 WL 5056093, at \*3 (N.D. Fla. Oct. 18, 2012), *aff'd sub nom.*, Synovus Bank v. Sims, 540 F. App'x 905 (11th Cir. 2013); *see also* Wells Fargo Bank, N.A. v. Richards, 226 So. 3d 920, 922–24 (Fla. 4th DCA 2017).

Defendant thereby asserts that Plaintiff's two documents, because they are not signed by the creditor, are essentially unilateral and therefore not a valid renewal of the mortgage note. As Section 687.0304(2) clearly provides, a credit agreement must be signed by the creditor. Plaintiff contends, however, that the fact that his documents were signed by Lara Waters as a branch manager of the Defendant's bank,

satisfies this requirement. Although the "Received/Accepted" notation that accompanied her signature might suggest something other than an intention to enter into a binding contract, Plaintiff alleges that Waters' signature did so bind Defendant to his new note, and in ruling on a motion to dismiss, the court must accept Plaintiff's allegations as true.[4]

Defendant also takes issue with Plaintiff's apparent claim that the contract was formed or accepted by Defendant when Defendant failed to return certain documents to him. Defendant argues that this amounted to an unfair requirement that it perform an affirmative act to *prevent* the formation of a binding agreement, and for that reason the contract is not valid. This requirement, coupled with Defendant's assertion that it did not sign off on Plaintiff's note, leads Defendant to argue that, if a contract were held valid in this case, anyone could therefore walk into one of Defendant's branch banks, drop off paperwork as Plaintiff did, and simply wait for the lack of response to declare that a contract had been formed.

---

[4] Frankly, it is unclear as to how Defendant can effectively assert that there is no signature from Defendant on the note. Defendant does not address Ms. Waters' signature at all, much less dispel its validity or challenge the import that Plaintiff gives it. Since much if not all of the motion to dismiss is founded upon the assumption that Plaintiff's documents lacked a signature from Defendant, it seems likely that Defendant overlooked the need to address Ms. Waters' signatures, or simply did not notice them.

Aside from the merits of Defendant's argument, there is no clear indication as to why or how the return of the documents to Plaintiff is even a requirement to establish a valid agreement—if that is even what Plaintiff means to allege. Section 687.0304, or the common law of contracts for that matter, would not seem to espouse such a requirement and Plaintiff articulates no rationale for it. While the court additionally finds that the documents themselves do not itemize such a requirement, the court does so with one important caveat: the documents themselves are only partly legible. This is of course an overarching problem, and considered along with the fact that the documents themselves appear unsophisticated and unclear, one might draw the cursory conclusion that they cannot constitute a valid credit agreement—and this may indeed be the case. Nonetheless, in the final analysis the court must find that the motion to dismiss does not launch a successful attack on the validity of the contract, and therefore the motion should be denied, albeit without prejudice.

Plaintiff's "Motion for Default Summary Judgment . . ." should also be denied. The default Plaintiff appears to allege is not defined, and the motion otherwise asserts that Defendant's attorney's "comment, answer, brief, request, or notice" is

insufficient to establish a motion to dismiss or for summary judgment (ECF No. 13 at 3).[5]

Accordingly, it is respectfully **RECOMMENDED**:

1.   That the Motion to Dismiss (ECF No. 16) filed by Defendant PNC BANK, N.A. ("PNC") be **DENIED** without prejudice.

2.   That Plaintiff's "Motion for Default Summary Judgment . . ." (ECF No. 13), be **DENIED**.

3.   That Plaintiff's "Motion for Compensation/Damage Amount Change" (ECF No. 17) be **GRANTED** to the extent that Plaintiff's prayer for relief be amended as reflected therein.

---

[5] In general, Plaintiff's pleadings indicate that he subscribes to what many other courts have come to recognize as the "Sovereign Citizen Movement," which generally advances the argument that individuals, as natural humans, are their own "Secured Party Sovereigns," citizens of the United States only by contracts which are constrained through such laws as the Uniform Commercial Code (UCC), one of the results evidently being that the individual is not properly or jurisdictionally subject to the laws of the state or federal government. *See, e.g.,* Schlager v. Beard, 398 F. App'x 699, 701–02 (3d Cir. 2010); Rowe v. Pennsylvania, No. 13-4094, 2014 WL 2805245, at *3 (E.D. Pa. Jun 20, 2014); Gravatt v. United States, 100 Fed. Cl. 279, 283, 286–89 (Fed. Cl. 2011) (noting that "[s]o-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings," and dismissing plaintiff's claims) (citations omitted). An unfortunate byproduct of this approach is that it tends to employ legal concepts that are ill-defined and often flawed at their core. This motion is no exception.

4.     That this matter be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 29th day of January 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**